ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: 408-641-9966
Fax: 408-866-7334
Emails: farsadlaw1@gmail.com;
nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

In re:

MORA HOUSE ONE, LLC,

                Debtor / debtor-in-possession.

Case No.: 22-50917 SLJ

Chapter 11

**DISCLOSURE STATEMENT TO PLAN OF REORGANIZATION DATED DECEMBER 3, 2022**

**Judge: Hon. Stephen L. Johnson**

DISCLOSURE STATEMENT                                          Case No. 22-50917

Table of Contents

I. INTRODUCTION ..................................................................................................4

A. Purpose of This Document

B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

C. Disclaimer

II. BACKGROUND ................................................................................................ 5

I.

A. Description and History of the Debtor's Business

B. Management of Debtor and Description of Insiders

C. Events Leading to Chapter 11 Filing

D. Significant Events During the Bankruptcy Case

E. Projected Recovery of Avoidable Transfers

F. Claims Objections

G. Current and Historical Financial Conditions

II. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................................................................7

A. What is the Purpose of the Plan of Reorganization?

    1. Administrative Expenses

    2. Priority Tax Claims

B. Classes of Claims and Equity Interests

    1. Classes of Secured Claims

    2. Classes of Priority Unsecured Claims

    3. Class of General Unsecured Claims

    4. Class of Equity Interest Holders

C. Means of Implementing the Plan

    1. Source of Payments

    2. Post-confirmation Management

D. Risk Factors and Default Provisions

E. Executory Contracts and Unexpired Leases

F. Tax Consequences of Plan

III. CONFIRMATION REQUIREMENTS AND PROCEDURES ...........................13

A. Who May Vote or Object

    1. What Is an Allowed Claim or an Allowed Equity Interest?

    2. What Is an Impaired Claim or Impaired Equity Interest?

    3. Who is Not Entitled to Vote

    4. Who Can Vote in More Than One Class

B. Votes Necessary to Confirm the Plan

    1. Votes Necessary for a Class to Accept the Plan

    2. Treatment of Nonaccepting Classes

C. Liquidation Analysis

D. Feasibility

    1. Ability to Initially Fund Plan

    2. Ability to Make Future Plan Payments and Operate Without Further Reorganization

IV. EFFECT OF CONFIRMATION OF PLAN …………………………………………..16

    A. DISCHARGE OF DEBTOR

    B. Modification of Plan

    C. Final Decree

V. OTHER PLAN PROVISIONS ……………………………………………....……. 17

## I.     INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Mora House One, LLC (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by Debtor.  A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A.** Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages 7 through 12 of this Disclosure Statement. General unsecured creditors are identified in Class 3, and will receive a distribution of approximately 100 percent of their allowed claims in one (1) payment made at the close of escrow upon the sale of the Property.

### A.  Purpose of This Document

This Disclosure Statement describes:
- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.  **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1.  *Hearing to Approve This Disclosure Statement*

The hearing at which the Court will determine whether to approve this Disclosure Statement will take place on **January 12, 2023, at 1:30 p.m., in Courtroom 9, at the United States Bankruptcy Court, 280 South First Street, San Jose, California. (You can appear in**

**person or via Zoom Tele Conference. Please refer to the Notice of Hearing for more information on how to arrange your appearance.)**

2. *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Farsad Law Office, P.C., 1625 The Alameda, Suite 525, San Jose, CA 95126.  See section IV.A., below, for a discussion of voting eligibility requirements.

Your ballot must be received by [TBD] or it will not be counted.

3. *Deadline for Objecting to Confirmation of the Plan*

Objections to Confirmation of the Plan must be filed with the Court and served upon Debtor and Debtor's counsel by [TBD].

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Nancy Weng or Arasto Farsad, 1625 The Alameda, Suite 525, San Jose, CA 95126.

**C.  Disclaimer**

This Disclosure Statement, if approved, does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

**II. BACKGROUND**

**A.  Description and History of the Debtor's Business**

On October 7, 2022, the Debtor filed the instant case to stop the attempted foreclosure of the real property located at 10718 Mora Drive, Los Altos, CA 94024 ("Property") by his senior mortgage holder, OKOA Capital LLC. The Debtor had previously filed a Chapter 11 under FRE 355 Investment Group, LLC, case number 20-50628, on April 13, 2020 that was consolidated with case number 20-50631, titled In Re Mora House, LLC. The prior Chapter 11 case not successful due to the value of the Property at that time and an aggressive predatory (negative amortization) first lien creditor. Now, however, the circumstances have changed. Some of the changes that will assist this case with a hopeful confirmable and consensual reorganization plan are outlined as follows:

1. Different creditors: The Debtor has a new lender, and the subject lien is not a negative amortization loan -- which was an issue in the last case with prior loan servicer and lender, Platinum Loan Servicing.

2. Buyback after a wrongful foreclosure: In regard to the Platinum Loan Servicing, they wrongfully foreclosed on the Property after receiving relief from stay and a lawsuit resulted in a buy-back of the Property for only $12.5 million.

3. Roughly the same amount of debt is owed but the value of the Property has increased nearly 40%: The total debts now owed are $12,500,000.00 to a first (OKOA Capital LLC), $2,400,000.00 to a second (private lender Mason Brutschy), and unsecured debt of around $1.5 million dollars. (Creditor Simon Yiu as well as the Debtor's own principal, Melvin Vaughn.)

4. The good news -- a very similar property sold recently in the area for $21,000,000.00 and the new value of the Property is at least $21,000,000.00. The Debtor has been trying for the past 6 months to get $25,000,000.00 for it (based on two appraisals putting the property at $25 and $26 million respectively) but it's obvious that the true price point is in the $21,000,000.00 range. The Debtor is now willing to decrease the price to get the Property sold and plans to do so with a fairly quick SARE "sale" plan.

5. Note: in regard to the sale, in addition to an aggressive price reduction, the Debtor is hiring a new Realtor as well and will be filing the requisite application to employ said Realtor shortly. To further support the sale,                              the Debtor's principal is adding in the specific adjacent property identified as APN 331-14-067 which is 1.47 acres of bare land and it provides requisite privacy, more land, and is a $2-3,000,000.00 bonus.

## B. Management of Debtor and Description of Insiders

Mr. Vaughn, the sole member and manager of the LLC, was appointed as the responsible individual for Debtor and has managed Debtor since the filing of the Chapter 11 Petition. Mr. Vaughn is the only insider of the Debtor.

## C. Events Leading to Chapter 11 Filing

On October 7, 2022, as stated above, the Debtor filed the instant case to stop the attempted foreclosure of the Property by his senior mortgage holder. The auction was set for that date and Mr. Vaughn authorized the Debtor to file the petition.

## D. Significant Events during the Bankruptcy Case

1. Debtor filed a motion to employ his general bankruptcy counsel on October 14, 2022 (Dkt No. 18) and the Honorable Court granted the motion on November 8, 2022 (Dkt No. 28).
2. An order designating Melvin Vaughn as the responsible individual was entered on October 21, 2022 (Dkt No. 26).
3. The Debtor anticipates filing an Ex Parte Application to Employ a Professional (a new Realtor) in the next 2 weeks. Also, to deal with the large capital gains, the

Debtor plans to seek employment of an accountant as well but will do so once the Property is in contract / closer to a sale.

4. The Debtor does not anticipate any Motions to Value at this time as the Property has significant equity in it above the liens / debts owed.

5. Debtor's counsel has been working with the primary lienholder's counsel (Mr. Mike Neue for OKOA Capital LLC) on a Stipulation for Adequate Protection during the Debtor's proposed Sale Period as of November 12, 2022.

6. Debtor's counsel is also working with counsel (Mr. Ron Rossi) for the largest general unsecured creditor, Mr. Simon Yiu. As Mr. Yiu is not a secured creditor, no formal Stipulation or agreement is being drafted unless and until the Honorable Court approves the Debtor's proposed Disclosure Statement.

**E. Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**F. Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

**G. Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are as follows: The Property located at 10718 Mora Drive, Los Altos, CA 94024 is valued at ~$25,000,000 based on an appraisal dated 5/21/22. Regardless, in order to sell as quickly as possible, the Debtor plans to list the Property for significantly less.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case will be filed shortly / soon. It's not technically due as of the date of the filing of this Disclosure Statement.

**III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A. What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### 1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a) (2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Attorneys' Fees as approved by the Court | $15,000.00 | Payment in full (if funds are available) once the Court reviews and approves a formal application for fees and costs |
| United States Trustee | $650.00 or based on distributions | Payment in full of the amount(s) on the Plan's Effective Date. |
| Realtor / Broker | Based on a Court approved listing agreement | Only will be paid after Court approval of compensation after a formal application is filed / heard |
| CPA / Accountant | Based on Court approved contract | Only will be paid after Court approval of compensation after a formal application is filed / heard |
| TOTAL | $15,650.00 | |

### 2. *Priority Tax Claims/Class 1*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a) (8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The following chart lists the Debtor's estimated § 507(a) (8) priority tax claims and their proposed treatment under the   lan:

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| IRS** | TBD | TBD | TBD | TBD |
| FTB | $1,633.31 | 5% | $1,633.31 | 1 |
| **(The TBD amount owed to the taxing agency by the Debtor will be assessed during the sale of the Property based on the net capital gain(s). As of now, the Debtor does not believe that he owes any priority or non-priority tax debts.) | | | | |

C.  **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.  *Classes of Secured Claims/Class 2*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

**Property to be Sold.  (Class 2)**

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|-------|------------------|------------|---------------------|-----------------|
| 2A | Okoa Capital, LLC <br><br>(1st Mortgage) <br><br>**(POC # 3)** <br>**(Balance $12,637,103)** | 10718 Mora Drive, Los Altos, CA 94024 | $23,500,000.00 | A Stipulation and Creditor is attached as **Exhibit F**; Claim to be paid in full upon sale of property |
| 2B | Mason Brustchy <br><br>(2nd Mortgage) <br>(No POC yet) <br>(Balance: ~$2.5 M) | 10718 Mora Drive, Los Altos, CA 94024 | $23,500,000.00 | $0.00 (to be paid in full upon sale of Property) |
| 2C | Santa Clara County Property Tax Assessor's Office <br><br>($159,457.24* (*2022/2023 current balance owed, and if more is owed by the time of the Sale, this amount will be adjusted accordingly) | 10718 Mora Drive, Los Altos, CA 94024 | $23,500,000.00 | $0.00 (to be paid in full upon sale of Property) |

Debtor will sell the above collateral by **April 7, 2023**,[1] paying the above secured creditors from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days' notice to lien holders.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

### 2. *Classes of Priority Unsecured Claims/Class 1 A*

Certain priority claims that are referred to in §§ 507(a) (1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

---

[1] To further support the sale, adding in the specific                                    the Debtor's principal is 4-067 which is 1.47 acres of bare land and it provides requisite privacy, more land, and is a $2-3,000,000.00 bonus.

The following chart lists all classes containing claims under §§ 507(a) (1), (4), (5), (6), and (a) (7) of the Code and their proposed treatment under the Plan: **None as of yet.**

### 3.  *Class of General Unsecured Claims/Class 3*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  The following chart identifies the Plan's proposed treatment of        Class 3 which contains general unsecured claims against the Debtor:

| Name of Creditor **FTB** | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Simon Yiu (general unsecured creditor who is currently suing the Debtor and its principal in State Court for Breach of Contract) | $860,000.00 | N | $860,000 | $0.00 (to be paid in full upon sale of Property) |
| Melvin Vaughn* (not entitled to vote as an insider-personal loan provided to Debtor) | $500,000.00 | N | $500,000 | $0.00 (to be paid in full upon sale of Property) |
| Melvin Vaughn* (not entitled to vote as an insider-attorney and court filing fee) | $13,738.00 | N | $13,738.00 | $0.00 (to be paid in full upon sale of Property) |
| **Franchise Tax Board (POC # 2)** | **$398.00** | **N** | **$398.00** | $0.00 Paid in full upon sale of Property |
| **TOTAL** | **$1,374,136.00** | **N** | **$1,374,136.00** | **PAID IN FULL UPON SALE** |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Creditors will receive **100 percent of their allowed claims in one (1) payment made at the close of escrow upon the sale of the Property.**

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan.  **This class is impaired and is entitled to vote on confirmation of the Plan with exception to creditor Melvin Vaughn who is an insider of the Debtor and is not entitled to vote.**  Debtor has indicated above whether a particular claim is disputed.

### 4.  *Class of Equity Interest Holders/Class 4*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity Interest Holders (Mr. Melvin Vaughn is 100% of the subject LLC) | Unimpaired | Shall be entitled to the net funds after sale of the subject property and after ordinary and necessary expenses and plan payments. |

## D. Means of Implementing the Plan

### 1. Source of Payments

Payments and distributions under the Plan will be funded by the following: The sale of the Property.

### 2. Post-Confirmation Management

The Post-Confirmation Manager(s) of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Melvin Vaughn | Member | Yes | Manager | None |

## E. Risk Factors and Default Provisions

Debtor's Manager resides in Los Altos Hills, California next to the Property and is managing the Property almost daily to ensure its safety / preservation. The Debtor wants nothing more than to sell the Property as he is owed money (personal money that he saved) by the Debtor and also dedicated a significant amount of time, energy, and effort in developing this "estate" for sale. The Debtor understands that this his last opportunity to sell and pay off the creditors listed above and walk with a likely decent profit and so he's working hard towards that goal. Creditors should take this into account as they are voting on the proposed Plan. As for risks, there are always risks in "sale plans" but if the Property's list price is reduced, it's more than likely that it

will sell. Only recently two other similar estates sold for above $20,000,000.00 and this large estate market is not affected by the Federal interest rates as the buyers generally offer cash / no financing.

Upon Debtor's default in not selling the Property / failing to sell the Creditor must serve written notice of default to Debtor and Debtor's attorney. If Debtor fails to cure the default within ten (10) days after mailing such notice, Creditor may proceed without further order of the Court with its state law remedies.

## F. Executory Contracts and Unexpired Leases

The Plan, in Section 6.01(a), lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Section 6.01(b) also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Section 6.01 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## G. Tax Consequences of Plan

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

The following are the anticipated tax consequences of the Plan:

(1) Debtor proposes to pay all priority tax claims in full upon the sale of the Property as will be assessed by an employed CPA / accountant.

(2) Creditors should consult with a tax professional to determine the general tax consequences of any discharge and/or the receipt of Plan consideration (I.e., payment of their claims) after the Plan's confirmation.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that:

a. the Plan must be proposed in good faith;
b. at least one impaired class of claims must accept the plan, without counting votes of insiders;
c. the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and
d. the Plan must be feasible.

These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that **classes 2 and 3** are impaired (as stated above) and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent has noted which classes or creditors he believes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder

holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case is January 30, 2023.**

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Those **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code **(see classes 1 and 1A above)**; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].**

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B. Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders

within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later.

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a) (8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **<u>Exhibit C</u>**.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand (from the Sale of the Property) on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan and the sources of that cash are attached to this disclosure statement as **Exhibit D.**

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Plan Proponent has provided projected financial information. Those projections are listed in **Exhibit E**.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of: **Not applicable as this is a Sale Plan and all claims shall be paid in full upon the sale of the Property**.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

**V. EFFECT OF CONFIRMATION OF PLAN**

**A. DISCHARGE OF DEBTOR. No Discharge. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.**

**B. Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**C. Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

None.

RESPECTFULLY SUBMITTED,

Dated: JANUARY 30, 2023

*/s/ Melvin Vaughn*

MELVIN VAUGHN (Principal of the Debtor)

**Exhibit A - Copy of Proposed Plan of Reorganization**

# United States Bankruptcy Court

 <u>Northern</u> District of <u>California</u>

In re <u>Mora House One, LLC  ,</u>
Debtor

Case No.  <u>22-50917              </u>

Small Business Case under Chapter 11

## MORA HOUSE ONE, LLC'S PLAN OF REORGANIZATION,  <br> DATED DECEMBER 3, 2022

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of MORA HOUSE ONE, LLC (the "Debtor") from the sale of Debtor's real property / sole asset.

This Plan provides for 3 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders.  Unsecured creditors holding allowed claims will receive distributions which the Proponent of this Plan has valued at 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims in full upon the sale of Debtor's real property / sole asset.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01  <u>Class 1</u>.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under §507(a)(8)).

2.02  <u>Class 2.</u>  The claim of  <u> *see below*  </u> to the extent allowed as a secured claim under § 506 of the Code.

<u>Class 2A</u>            Okoa Capital, LLC

<u>Class 2B</u>            Mason Brustchy

<u>Class 2C</u>            Santa Clara County Tax Assessor's Office

2.03          Class 3.  All unsecured claims allowed under § 502 of the Code.

2.04          Class 4.  Equity interests of the Debtor

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes.

3.02    Administrative Expense Claims.   Each holder of an administrative expense claim allowed under § 503 of the Code [, and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.   Each holder of a priority tax claim will be paid the present value of such claim in regular installments paid over a period not exceeding 5 years from the order of relief.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| | | |
|---|---|---|
| Class 2A - Okoa Capital, LLC (secured by 10718 Mora Dr., Los Altos, CA 94024) | Impaired | Debtor will sell the collateral by April 7, 2023, paying off this claim from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28-days' notice to lien holders. |
| Class 2B - Mason Brustchy(secured by 10718 Mora Dr., Los Altos, CA 94024 | Impaired | Debtor will sell the collateral by April 7, 2023, paying off this claim from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28-days' notice to lien holders. |
| Class 2C - Santa Clara County Property Tax Assessor's Office | Impaired | Debtor will sell the collateral by April 7, 2023, paying off this claim from the proceeds of the sale. Debtor will |

| | | file a motion for approval of any such sale on 28-days' notice to lien holders. |
|---|---|---|
| Class 3 – General Unsecured Creditors<br>1. Simon Yiu ($860,000)<br>2. Melvin Vaughn ($500,000)<br>3. Melvin Vaughn ($13,738.00) | Impaired | Class 3 shall be paid in full upon sale of property. |
| Class 4 – Equity Security Holders of the Debtor | Unimpaired | Class 4 shall be entitled to the net funds after sale of the subject property and after ordinary and necessary expenses and plan payments. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### N/A

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### N/A

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the [Insert "effective date of this Plan as provided in Article VII," "the date of the entry of the order confirming this Plan," or other applicable date]:

None.

    (b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the [Insert "effective date of this Plan," "the date of the entry of the order confirming this Plan," or other applicable date]. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than __N/A_____ _(__ ) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

    Debtor will sell sole, real property asset by April 7, 2023, paying off all claims in the case from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28-days' notice to lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2.

## ARTICLE VIII
## GENERAL PROVISIONS

    8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: [Insert additional definitions if necessary].

    8.02    Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

    8.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

    8.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

    8.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

    [8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

[8.07    Corporate Governance.  [If the Debtor is a corporation include provisions

required by § 1123(a)(6) of the Code.]]

# ARTICLE IX
# NO DISCHARGE OF DEBTOR

**9.01** <u>No Discharge.</u>  In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

# ARTICLE X
# <u>OTHER PROVISIONS</u>

## N/A

Dated: December 3, 2022

Respectfully submitted,

By:  _/s/ Melvin Vaughn_____
      Melvin Vaughn,
      Managing Member of Mora House One, LLC
      The Plan Proponent

By:  _/s/ Arasto Farsad_____
      Arasto Farsad
      Attorneys for the Plan Proponent

**Exhibit B – Most recently Filed Post-Petition Operating Report**

Fill in this information to identify the case:

Debtor Name _____

United States Bankruptcy Court for the: _____ District of _____

Case number: _____

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                12/17

Month: _____                Date report filed: _____
                                                     MM / DD / YYYY

Line of business: _____                NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: _____

Original signature of responsible party _____

Printed name of responsible party _____

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

**If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.**

|  |  | Yes | No | N/A |
|---|---|---|---|---|
| 1. | Did the business operate during the entire reporting period? | ☐ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☐ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☐ |

**If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.**

|  |  | Yes | No | N/A |
|---|---|---|---|---|
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☐ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☐ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☐ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☐ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☐ | ☐ |

Case: 22-50917    Doc# 35    Filed: 01/30/23    Entered: 01/30/23 16:45:09    Page 26 of
42

17. Have you paid any bills you owed before you filed bankruptcy?   ❑   ❑   ❑

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ❑   ❑   ❑

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.     $ _____

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.     $ _____

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.     − $ _____

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.     + $ _____

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.     = $ _____

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**     $ _____

    *(Exhibit E)*

Case: 22-50917   Doc# 85   Filed: 01/31/23   Entered: 01/31/23 16:45:09   Page 27 of 4
42

Debtor Name _____    Case number_____

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                          $ _____

     *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                       _____
27. What is the number of employees as of the date of this monthly report?                          _____

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $ _____
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ _____
30. How much have you paid this month in other professional fees?                                    $ _____
31. How much have you paid in total other professional fees since filing the case?                   $ _____

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ _____ | − | $ _____ | = | $ _____ |
| 33. **Cash disbursements** | $ _____ | − | $ _____ | = | $ _____ |
| 34. **Net cash flow** | $ _____ | − | $ _____ | = | $ _____ |

35. Total projected cash receipts for the next month:                                                $ _____

36. Total projected cash disbursements for the next month:                                          − $ _____

37. Total projected net cash flow for the next month:                                               = $ _____

Case: 22-50917   Doc# 85   Filed: 01/31/23   Entered: 01/31/23 16:45:09   Page 28 of 4
42

<table>
<tr><td style="background:black"> </td><td><strong>8. Additional Information</strong></td></tr>
</table>

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- ☐ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

- ☐ 39. Bank reconciliation reports for each account.

- ☐ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

- ☐ 41. Budget, projection, or forecast reports.

- ☐ 42. Project, job costing, or work-in-progress reports.

Case: 22-50917   Doc# 85   Filed: 01/31/23   Entered: 01/31/23 16:45:09   Page 29 of
42

## Exhibit C – Liquidation Analysis

**Plan Proponent's Estimated Liquidation Value of Assets**

| | | |
|---|---|---|
| a. | Cash on Hand | $0.00 |
| b. | Accounts Receivable | $0.00 |
| c. | Inventory | $0.00 |
| d. | Office furniture and Equipment | $0.00 |
| e. | Machinery & equipment | $0.00 |
| f. | Automobiles | $0.00 |
| g. | Building and Land | $23,500,000.00 |
| h. | Customer List | N/A |
| i. | Investment Property (such as stocks, bonds or other financial assets) | N/A |
| j. | Lawsuits or other claims against third parties | N/A |
| k. | Other intangibles (such as avoiding action powers) | N/A |
| **Total Assets at Liquidation Value** | | **$23,500,000.00** |

Less:
Closing costs/Commission                                   **($1,175,000.00)**
Less:
Secured Creditors' Recoveries                              **($15,659,458.00)**
Less:
Capital gains taxes at 20% for long term capital gains     **($1,068,109.00)**
Less:
Chapter 7 Trustee Fees and Expenses                        **($137,374.00)**
Less:
Chapter 11 Administrative Expenses                         **($15,650.00)**
Less:
Priority claims, excluding administrative expense claims
Less:
Balance for unsecured claims                               **($1,373,738.00)**

**NET TO DEBTOR'S PRINCIPAL =**                            **$4,070,671.00**

**Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan: 100%.**

**Percentage of Claims Which Unsecured Creditors Will Receive or Retain under a Liquidation Analysis: <u>0%</u>. (**If this sale does not occur, the Property will go to auction and it's extremely unlikely that the auction would result in anything more than a credit bid / very hard to get someone to show up to an auction with cash for an estate like this. Accordingly, it's unlikely that the first / second and property taxes would all get paid at a foreclosure and then leave money left over for the general unsecured creditors.)

DISCLOSURE STATEMENT                                    -22-                         Case No. 22-50917 SLJ

**<u>Exhibit D – Cash on hand on the effective date of the Plan</u>**

**N/A**

**Cash on hand on effective date of the Plan:** _____

**Less:**

      Amount of administrative expenses payable _____
      On Effective Date

      Amount of statutory costs and charges

      Amount of cure payments for executory contracts

      Other Plan Payments due on effective date of the Plan

      Balance after paying these amounts:

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

      Cash in DIP account as of _____-           _____

      Additional cash Debtor will anticipate
      Accumulate from net earnings between now
      and effective date of the Plan and basis for
      these projections are as follows:

_____

      Borrowing (terms of repayment: N/A)

      Capital Contributions

      Other

Total: _____

## **Exhibit E – Projections as Flow and Earnings for Post-Confirmation Period**

### **N/A**

1

**Exhibit F – Stipulation for Adequate Protection Related to First Lien Secured by Real Property**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 22-50917 SLJ

Arasto Farsad, Esq. (SBN # 273118)
Nancy Weng, Esq. (SBN # 251215)
**FARSAD LAW OFFICE, P.C.**
1625 the Alameda, Suite 525
San Jose, CA 95126
Tel: (408) 641-9966
Fax: (408) 866-7334
Email addresses: farsadlaw1@gmail.com;
nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No.: 22-50917 SLJ |
| | Chapter 11 |
| MORA HOUSE ONE, LLC, | |
| | **MOTION TO APPROVE STIPULATION** |
| | **FOR ADEQUATE PROTECTION** |
| Debtor / debtor-in-possession. | **RELATED TO FIRST LIEN SECURED** |
| | **BY REAL PROPERTY** |
| | |
| | Judge: Hon. Stephen L. Johnson |
| | |
| | |

 **TO THE HONORABLE JUDGE STEPHEN L. JOHNSON, THE UNITED STATES TRUSTEE'S OFFICE FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES IN INTEREST AND THEIR RESPECTIVE COUNSEL(S) OF RECORD:**

Mora House One, LLC (the "Debtor"), and Okoa Capital, LLC ("Secured Creditor"), first lien holder of the loan secured by real property located at 10700 Mora Drive, Los Altos, CA 94024, ("Subject Property") by and through their attorneys of record herein, file this motion (the "Motion") for an order approving the parties stipulation (the "Stipulation") which provides for adequate protection payments to Secured Creditor. A copy of the Stipulation is attached to this Motion as **Exhibit A** and was also filed on the court's docket at Dkt. 32.

Motion to Approve Stipulation for
Adequate Protection                                                    Case No. 22-50917-SLJ

**BACKGROUND**

  A. The recitals set forth in the Stipulation are incorporated into this Motion by reference, and provide the background for this Motion.

  II. **ARGUMENT**

  The Debtor brings this Motion pursuant to Federal Rule of Bankruptcy Procedure 4001(d)(1)(A) requesting that the Court enter an order approving the Stipulation. Stipulations lifting or agreeing to relief from the stay are enforceable so long as they are properly noticed to creditors and approved by the court. FRBP 4001(d)(1). See also *In re Randall Enterprises, Inc.*, Bkrtcy.D.Colo.1990, 115 B.R. 292 (Consensual agreements between parties concerning application of the automatic stay are permissible pursuant to applicable rules and procedures as authorized by court order after appropriate notice and opportunity for hearing).

  Here, the Stipulation provides the Debtor with an opportunity to maximize the value of the Subject Property for its marketing, while providing adequate protection to the Secured Creditor. In addition, the Parties waive the 14-day stay as contemplated by Federal Rule of Bankruptcy Procedure 4001(a)(3), and, subject to the Court's approval of such waiver, the Stipulation shall be effective immediately.

**CONCLUSION**

  Pursuant to the above, the Debtor requests that the Court enter an order approving the Stipulation.

Dated: November 25, 2022     FARSAD LAW OFFICE, P.C.

*/s/ Arasto Farsad*
Arasto Farsad, Esq.
Attorneys for Debtor herein

Motion to Approve Stipulation for
Adequate Protection          Case No. 22-50917-SLJ

EXHIBIT A

ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: 408-641-9966 / Fax: 408-866-7334
Emails: farsadlaw1@gmail.com; nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession:
MORA HOUSE ONE, LLC

Mike Neue, Esq. (SBN 179303)
GERACI LAW FIRM
90 Discovery Irvine, CA 92618
Tele.: (949) 379-2600
Fax: (949) 379-2610
E-mail: m.neue@geracillp.com

Attorneys for OKOA CAPITAL LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re: | ) Case No.: 22-50917 SLJ |
| | ) Chapter 11 |
| | ) |
| | ) |
| MORA HOUSE ONE, LLC, | ) **STIPULATION FOR ADEQUATE** |
| | ) **PROTECTION RELATED TO <u>FIRST</u>** |
| | ) **LIEN SECURED BY REAL PROPERTY** |
| Debtor / debtor-in-possession. | ) **Judge: Hon. STEPHEN L. JOHNSON** |
| | ) |
| | ) |
| _____ | ) |

**TO THE HONORABLE JUDGE STEPHEN L. JOHNSON:** Now Comes the Debtor, MORA HOUSE ONE, LLC, and Secured Creditor, OKOA CAPITAL LLC ("Secured Creditor"), a secured creditor and a party in interest, by and through their attorneys of record, now enter into the below stipulation to resolve and agree to plan treatment of the first lien attached to the real property commonly known as 10700 Mora Drive Los Altos, CA 94024 (the "Property").

## RECITALS:

1.  Secured Creditor holds the FIRST lien on the Property evidenced by a promissory note ("Note") dated August 26, 2021, in the original principal amount of $11,500,000, which is secured by the Property pursuant to a Deed of Trust. Pursuant to the terms of the Deed of Trust, Secured Lender holds a valid and perfected security interest in the rents generated by the Property ("Cash Collateral").

2.  On October 7, 2022, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Northern District of California.

3.  The parties have conferred and agreed upon adequate protection payments to be made to Secured Creditor, and those terms are reflected below.

## THE PARTIES HERETO STIPULATE AND AGREE AS FOLLOWS:

4.  Secured Creditor holds a fully secured first lien on the Subject Property and Cash Collateral which has a payoff amount of $12,886,769 as of November 2, 2022 (with interest continuing to accrue at the rate of 12% per annum, or $115,000 per month, plus attorneys' fees and costs).

5.  The Debtor / Property shall have six (6) months from the petition date ("Sale Period") to sell or refinance the Property and pay Secured Creditor in full. For clarity, the Sale Period shall end on April 7, 2023.

6.  All contractual arrears due under Secured Creditor's Note, including attorneys' fees and costs, shall be paid through the Debtor's Chapter 11 plan.

7. During the Sale Period, the Debtor shall make ongoing adequate protection payments of $75,000.00 per month to Secured Creditor.

8. The first payment shall be due on January 15, 2023 and each consecutive payments shall be due on or before the 15th day of each month thereafter.

9. Payments shall be made to: OKOA CAPITAL LLC in accordance with wiring instructions provided to the Debtor.

10. The Debtor shall maintain insurance coverage on the Property and shall remain current on all taxes that all due post-petition with regard to the Property.

11. Any Cash Collateral generated by the Property shall be retained in the Debtor-in-Possession bank account, and may only be used to make payments to Secured Creditor, or with prior Court authorization.

12. If any payment required hereunder is not timely made, Secured Creditor shall serve written notice upon the Debtor's attorney (via email, at the addresses shown on the first page of this stipulation), allowing the Debtor ten (10) calendar days from the date of service to cure the default.

13. If a payment default hereunder is not cured before the expiration of said ten-day period, Secured Creditor may submit a declaration re: breach of condition and a stay relief order, which the Court may enter without further notice or hearing, notwithstanding the Sale Period.

14. Debtor shall be entitled up to two (2) such notices of default and opportunities to cure. Once Debtor has defaulted this number of times on the obligations imposed by this Order and has been served with this number of notices of default, Secured Creditor is relieved of any obligation to serve additional notices of default or to provide additional opportunities to cure, and may submit a proposed order terminating the stay in accordance with the foregoing paragraph.

15. In the event that the Property is not sold on or before the Sale Period expiration, Secured Creditor shall be deemed to have been granted immediate relief from the automatic stay

pursuant to 11 U.S.C. §§362(d)(1), without the necessity of a further order of this Court (the order approving this stipulation shall constitute the order granting relief).

16. Entry of an order pursuant to the default provisions of this stipulation, or the expiration of the Sale Period, shall terminate the automatic stay for all purposes, including allowing Secured Creditor to notice, proceed with, and hold a trustee's sale of the Subject Property, pursuant to applicable state law and without further Bankruptcy Court Order or proceeding being necessary, and any action necessary to obtain complete possession of the Subject Property, including unlawful detainer.

17. The 14-day stay as provided in FRBP 4001(a)(3) is waived.

18. Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Creditor's Secured Claim.

19. The terms of this Stipulation may not be modified, altered, or changed by the Plan, any confirmation order thereon, any subsequently filed Amended Chapter 11 Plan of Reorganization and confirmation order thereon without the express written consent of the Secured Creditor.

20. All other terms of the Deed of Trust and Note not directly altered by this agreement will remain in full force and effect.

21. If this Chapter 11 bankruptcy is dismissed or converted to another chapter under Title 11, Secured Creditor's lien shall remain a valid secured lien for the full amount due under the Note, and all payments received under this agreement shall be applied contractually under the original terms of the Deed of Trust and Note.


**IT IS SO STIPULATED:**


Dated: NOVEMBER 22, 2022

FARSAD LAW OFFICE, PC.


By: */s/ Nancy Weng*
Printed Name: Nancy Weng

Stipulation for Adequate Protection Related to FIRST Lien Secured by Real Property

4

Attorneys for Debtor

**<u>AND</u>**


Dated: NOVEMBER 22, 2022

GERACI LLP


By: _/s/ Mike Neue_
Printed Name: <u>Mike Neue</u>
Attorneys for Secured Creditor